Maureen **HOLDERFIELD**

v.

Johnnie **JONES**, Warden.

Civ. A. No. 94–4167.

United States District Court, E.D. Louisiana.

Nov. 2, 1995.

Maureen Holderfield, St. Gabriel, LA, pro se.

William R. Campbell, Jr., New Orleans, LA, for defendant.

## ORDER AND REASONS

JONES, District Judge.

■ The Court, after considering the complaint, the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge, the Objection filed by petitioner in opposition to the Report and Recommendation and the Response to Petitioner's Objection to the Report and Recommendation, hereby approves the Report and Recommendation of the Magistrate Judge and adopts it as its own opinion in this matter, with the following modifications. The Court writes separately to address issues raised by the petitioner.[1]

1. Upon review of the entire record, the Magistrate Judge summarily stated: "[t]his matter can be disposed of without an evidentiary hearing." (R.Doc. 8, p. 1.). The Court agrees. "A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing." *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). As will be shown, there are no factual disputes in this matter, only a dispute as to the applications of the law to the facts.

2. According to the Bill of Information, petitioner was originally charged with attempted second-degree murder and armed robbery of Charles N. Carson. (State Record 94–4167, Vol. 1 of 3, Bill of Information, p. 18.) However, a jury found petitioner guilty of armed robbery and a lesser-included offense of attempted manslaughter. *Id.* at 47–48.

3. *State of La. v. Maureen Holderfield*, No. 115–625, Twenty–Second Judicial District Court, Parish of St. Tammany. (State Record 94–4167,

### Background

In February 1984, petitioner Maureen Holderfield was found guilty of armed robbery and attempted manslaughter,[2] LSA–R.S. 14:64 and LSA–R.S. 14:27, 14:31, and received sentences of ninety (90) years at hard labor for armed robbery and ten (10) years at hard labor for attempted manslaughter, with the sentences to run concurrently.[3]

Petitioner directly appealed her convictions to the Louisiana First Circuit Court of Appeal. The First Circuit affirmed petitioner's convictions but amended petitioner's armed robbery sentence to be served without benefit of parole, probation, or suspension of sentence. *State v. Holderfield*, No. 84–0993, 464 So.2d 474 (La.App. 1st Cir.1985) (unpublished opinion).

Petitioner filed an application for post-conviction relief in the Twenty–Second Judicial District Court, Parish of St. Tammany, based upon the following claims:

1) petitioner was placed in jeopardy twice for the same charge;

2) petitioner received an excessive sentence of one hundred (100) years;

Vol. 2 of 3, p. 476.) The trial judge did not articulate whether the sentences were to be served concurrently or consecutively. *Id.* The Louisiana Court of Appeal in *State v. Holderfield*, No. 92–KW–1977 (Dec. 21, 1992), addressed and corrected the sentence as follows:

> [R]elator's claim that the sentences are illegal because the court imposed consecutive sentences has potential merit. Although the trial court could have imposed consecutive sentences, and possibly intended to do so, the transcript of the sentencing proceeding does not reflect that the court specifically ordered the sentences to be served in that manner, as required by La.C.Cr.P. art. 883. Although the minute entries reflect the imposition of consecutive sentences, where there is a conflict between the transcript and the minutes, the transcripts prevail. *See, State v. Landry*, 583 So.2d 911 (La.App. 1st Cir.1991). Accordingly, the trial court is ordered to correct the minutes of the sentencing proceeding and the commitment to reflect that the sentences are to be served concurrently. Relator's application is otherwise denied.

*Id.* at State Record 94–4167, Vol. 3 of 3, p. 37.

3) petitioner received an excessive sentence that constituted cruel and unusual punishment; and

4) petitioner was convicted based on insufficient evidence. Petitioner's request for post-conviction relief was denied by the trial court.[4] (State Record 94–4167, Vol 3 of 3, pp. 86, 120, 127.)[5] The Louisiana First Circuit Court of Appeal also denied petitioner's request for relief (State Record 94–4167, Vol 3 of 3, p. 37.), except as to whether petitioner's sentences would run consecutively or concurrently. *See* note 2, *supra.* Petitioner's request for relief was also denied by the Louisiana Supreme Court. (State Record 94–4167, Vol 3 of 3, p. 68.) Petitioner raises the following claims in this federal application for *habeas corpus* relief:

(1) petitioner received excessive sentences in violation of her Eighth Amendment right against cruel and unusual punishment;

(2) petitioner was placed in double jeopardy; and

(3) there was insufficient evidence to sustain her convictions.

■ The petitioner has litigated the above issues in the State's highest court. Therefore, the Court agrees with the Magistrate Judge that petitioner has exhausted her state court remedies and that her claim is properly before this Court. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), *See also Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988).

Law and Application

■ Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), because this is a post-conviction matter previously referred to the Magistrate Judge, the Court reviews the Magistrate

Judge's Report and Recommendation *de novo* because the Plaintiff has filed an objection.

## I. Excessive Sentence

Petitioner argues that her sentences of ninety (90) years for armed robbery and ten (10) years for attempted manslaughter are excessive and constitute cruel and unusual punishment. (R.Doc. 1, p. 5.) Petitioner's claim is two-pronged. First, she argues that the trial court did not articulate whether her sentences were to be served concurrently or consecutively and that in addressing the issue the court of appeal in *State v. Holderfield*, No. 92–KW–1977 (Dec. 21, 1992), incorrectly relied on *State v. Landry*, 583 So.2d 911 (La.App. 1st Cir.1991). Second, she contends that the trial judge sentenced her based on unreliable information as to her past record. The Court addresses these arguments in turn.

### A. State Court's Reliance on *State v. Landry*

Petitioner contends that the Louisiana court of appeal and the United States Magistrate Judge erroneously relied upon the principles enunciated in *State v. Landry, supra*, because *Landry* is outdated. Petitioner argues that she did not file or rely on post-conviction for errors patent nor did she seek to have the court correct an illegal sentence, which petitioner claims would be the only correct assertions of *State v. Landry*. (R.Doc. 9, p. 1.)

Instead, petitioner cites *State v. Husband*, 593 So.2d 1257 (La.1992), claiming that *Husband* is an update on the law and represents the exact circumstances as the present case. Petitioner relies on *Husband* for her argument that "when a sentencing Judge does not

---

4. The trial court actually issued three decisions as to petitioner's claim for post-conviction relief. In September 1991 the trial court dismissed the second, third and fourth claims as "fail[ing] to comply with the exclusive grounds listed in La. Code of Criminal Procedure article 930.3." (State Record, Vol. 3 of 3, p. 127.) In a separate order in March 1992 the trial court addressed and denied petitioner's first claim for relief due to double jeopardy. (State Record, Vol 3 of 3, p. 120.) Subsequently, the First Circuit Court of Appeal granted petitioner's writ of certiorari and remanded claims two, three and four to the trial

court for consideration. (State Record, Vol. 3 of 3, p. 111.) In September 1992 the trial court ruled on those claims, denying them and denying her motion for post-conviction relief. (State Record, Vol 3 of 3, p. 86.)

5. Pursuant to the Magistrate Judge's Order, the entire state court record was filed. (R.Doc. 3.) Thus, all references to the state court record will be indicated as State Record 94–4167, Vol. —— of ——, and the page number of the volume.

articulate a sentence to run concurrently or consecutively, and the Judge no longer presides on the bench, it is proper not to try to figure out his intent but to resentence the defendant to the sentencing guidelines applicable to sentences imposed after January 31, 1992, after hearing evidence from the defense and prosecution." *Id.* at 1258.

Respondent argues that neither the First Circuit nor the United States Magistrate Judge erred in applying *State v. Landry* to the matter at hand. Respondent states that, "according to *Landry,* the sentencing transcripts prevail over the minutes when the two are in conflict." (R.Doc. 11, p. 3.)

In *Landry,* there was a discrepancy between the sentencing transcript and the minute entries. The minute entries contained matters that were not offered by the judge in his sentence rendered in court. The Louisiana court of appeal held: "Where there is a discrepancy between the minute entry and the transcript, the transcript prevails." *Landry,* 583 So.2d at 912, n. 2, *citing State v. Lynch,* 441 So.2d 732, 734 (La.1983).

■ In the instant case the transcripts were silent but the minute entries stated that petitioner's sentences were to run consecutively. Following *Landry,* the First Circuit took the transcript's silence to be in conflict with the minute entries because, under Louisiana law, a judge must specifically order that sentences be served consecutively. (State Record 94–4167, Vol 3 of 3, p. 37.) *See* LSA–C.Cr.P. art. 883. Thus, the First Circuit ordered the trial court to amend the minute entries of the original sentencing hearing to reflect that petitioner's sentences run concurrently because of the lack of any specific order that they run consecutively. (State Record 94–4167, Vol 3 of 3, p. 37.)

■ *Husband* is factually distinguishable because *Husband* involved a motion to correct an illegally lenient sentence. There was no conflict between the minute entries and the transcript. The resentencing judge in *Husband* was, in effect, "actually imposing the first legal sentence in the case." *Id.* at 1258. For this reason and this reason only the Louisiana Supreme Court instructed the successor judge to also consider the applica-

ble state sentencing guidelines. Here, the sentences themselves were not inherently illegal as in *Husband.* The only question in this case was whether the sentences were to be served consecutively or concurrently (which the Court notes was resolved in Petitioner's favor). Thus, this case is more akin to *Landry* than *Husband.*

The Court concludes that the court of appeal and the Magistrate Judge properly relied upon the principles enunciated in *State v. Landry* to determine whether petitioner's sentences were to run concurrently or consecutively and rejects petitioner's arguments.

**B. Fictitious Information**

Petitioner also claims that the sentencing judge sentenced her based on unreliable information, *i.e.,* that she had a history of prior felony convictions. The Court finds that petitioner's claim is unfounded.

Petitioner's first contention as to this issue is that the Magistrate Judge's reliance on *Haynes v. Butler,* 825 F.2d 921, 923–924 (5th Cir.1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 717, 98 L.Ed.2d 667 (1988), for the proposition that "federal courts accord wide discretion and will normally not upset the terms of a sentence that is within statutory limits" is misplaced. Petitioner maintains *Haynes v. Butler* has "non [sic] bearing on the issue at hand and it is in the strictest interest of justice and within the jurisdiction of the Federal District Court to correct such an unjust mistake made by the state courts [sic]." (R.Doc. 9, p. 3.) However, petitioner provides no basis for this argument other than this unsubstantiated statement, which court rebuffs. Petitioner's sentences of 90 years for armed robbery and 10 years for attempted manslaughter were within the statutory limits of Louisiana law, as will be explained at length shortly.

Petitioner's next argument is that the resentencing judge, by giving petitioner the "benefit of the doubt," was not sure of her previous record, even though he referred to her as being a "multi-felony offender." (R.Doc. 9, p. 3.) Petitioner explains that she has tried to address the state courts on this issue but "they chose to ignore the applicable

laws and that is why petitioner is before this higher court [sic]." *Id.*

■ As the Report and Recommendation points out, the sentence of 90 years imposed for the conviction of armed robbery was well within the limits of LSA–R.S. 14:64, which provides a sentencing range of not less than five (5) years and not more than ninety-nine (99) years, without benefit of parole, probation or suspension of sentence. The sentence imposed for the conviction of attempted manslaughter was within the limits of LSA–R.S. 14:27, which provides a sentencing range of up to one-half of the maximum sentence for manslaughter.[6] Because petitioner's sentences were within the statutory limits of armed robbery and attempted manslaughter, whether or not she had a prior felony record is of no moment. This is particularly true in light of the specific findings of the Magistrate Judge that it was petitioner who first raised her previous convictions on direct examination; that the prosecutor on cross-examination merely followed up on the locations of those previous convictions; and that "there was never any mention made by the State that petitioner's prior convictions were felony convictions." (R.Doc. 8, p. 15.). The trial transcript buttresses this finding. *See* State Record 94–4167, Vol. 2 of 3, pp. 334–35 and 354–55, 57. Thus, the Court concludes that this is not hyperbole. It is what the evidence reveals.

■ Finally, the Court also agrees with the Report and Recommendation that, to the extent petitioner complains of violations of state procedure, any such complaints are to be addressed by the state courts. *Neyland v. Blackburn*, 785 F.2d 1283, 1289 (5th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986). Hence, the failure to adhere to state law procedural requirements does not provide for federal *habeas* relief. *Blackburn*, 785 F.2d at 1293.

## II. Double Jeopardy

Petitioner cites *State v. Williams*, 643 So.2d 284 (La.App. 2nd Cir.1994), in support of her contention that she has been placed in double jeopardy, thus violating her rights under the Fifth Amendment. However, this Court concurs with the State's Response to Petitioner's Objection to the Report and Recommendation that *Williams* is inapposite because, in this case, the State relied upon independent factual evidence to establish each crime for which petitioner was ultimately convicted. Unlike *Williams*, where the State relied upon the same evidence for both the armed robbery and for the establishment of the conviction for attempted first-degree murder. *Id.* at 285.

■ The following test to determine whether two different offenses are sufficiently distinguishable to permit punishment under both without violating the double jeopardy clause was established by the United States Supreme Court:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

■ The trial transcript confirms that petitioner's conviction for attempted manslaughter was based upon her specific intent to kill, not the commission of the armed robbery. *See* LSA–R.S. 14:27, 14:31(1). The testimony of the victim that petitioner stated, "We've got to finish him off ...," coupled with the fact that petitioner stabbed the victim in the chest, established specific intent to kill required under LSA–R.S. 14:27, 14:31, an element not necessary to prove armed robbery. (State Record 94–4167, Vol. 1 of 3, p. 164.) The conviction for armed robbery pursuant to LSA–R.S. 14:64 was based upon petitioner's act of taking the victim's money and watch while threatening him with a knife, an element not required to be shown for attempted manslaughter. (State Record 94–4167, Vol. 1 of 3, pp. 160, 162.) Therefore, applying *Blockburger*, the Court finds there was sufficient evidence to prove inde-

---

**6.** At the time of petitioner's sentencing, La.R.S. 14:31 provided that whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.

pendent additional facts to obtain a conviction on each distinct count.

Petitioner further argues that the original charge of attempted second-degree murder was based upon the commission of armed robbery as an element to the crime. However, this Court is persuaded by Respondent's Response to Petitioner's Objection that attempted second-degree murder, like manslaughter, can be and was established independently by a showing of the specific intent to kill. *See* LSA–R.S. 14:27, 14:31(1). Just because the prosecution sought a conviction on attempted second-degree murder and armed robbery does not bolster petitioner's argument that the second-degree murder charge was based upon the commission of armed robbery as an element to the crime.[7] Therefore, the Court finds that petitioner was not placed in Double Jeopardy in violation of the Fifth Amendment as applicable to the States through the Fourteenth Amendment.

### III. Insufficient Evidence

■■■■ Lastly, petitioner claims that the State presented insufficient evidence to find her guilty beyond a reasonable doubt of armed robbery and attempted manslaughter. As the Magistrate Judge stated, in order to uphold a conviction, the reviewing court must find "when viewing the evidence in the light most favorable to the prosecution, [that] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In the present case, the record contains direct evidence to support petitioner's conviction. First, the victim immediately identified and later testified that petitioner stabbed and robbed him. (State Record 94–4167, Vol. 1 of 3, pp. 92, 106–107.) Co-defendant, Thomas Brown corroborated this testimony.

(State Record 94–4167, Vol 2 of 3, pp. 285, 289.) A victim's positive identification (or by any one witness) of a defendant as well as the victim's testimony alone has been held to constitute sufficient evidence regarding the crime committed against the victim. *State v. Turner*, 591 So.2d 391 (La.App. 2nd Cir. 1991). Moreover, the U.S. and Costa Rican currency that had been taken from the victim's car was found on petitioner's person when she was stopped in close proximity to the victim's car. (State Record 94–4167, Vol. 1 of 3, p. 213.)

Petitioner proclaims that the present case has errors which rise above the simple standards of *Jackson v. Virginia* but fails to explain these errors in detail. Therefore, this Court embraces the Magistrate Judge's conclusion that on the basis of the record the State presented enough direct evidence to support petitioner's conviction.

■■■■ Petitioner further posits that the jury instructions were not proper. Relying on the doctrine of *falsus in uno, falsus in omnibus,*[8] petitioner temporized that when the testimony of the victim and the co-defendant conflicted, "it was apparent then that the falsus in omnibus instructions should have been given properly, not thrown in a language worded by the sentencing judge on what he thought appropriate and not a strict reading of the law." (R.Doc. 9, p. 5.) However, the trial judge gave specific instructions concerning the jury's determination and evaluation of the weight and credibility of the evidence and of the witnesses. (State Record 94–4167, Vol. 2 of 3, p. 426.) This Court affirms the Magistrate Judge's findings that "the trial judge specifically instructed the jury concerning its evaluation of a discredited witness, a witness' prejudice, or other reasons or motive for not telling the truth." *Id.* at 427. *See also* State Record 94–4167, Vol. 1 of 3, pp. 26, 27.[9] Therefore, this Court

---

7. *See* note 1 *supra*.

8. The doctrine means that if testimony of a witness on a material issue is willfully false and given with an intention to deceive, a jury may disregard all the witness' testimony. *Black's Law Dictionary*, 607 (6th Ed.1990).

9. The trial court's jury instruction provided: "[A]s jurors you alone shall determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses, and of the weight their testimony deserves, you should scrutinize carefully the testimony given and the circumstances under which the witness has testified." The trial court's jury instruction further states, "The testimony of a witness may be dis-

sustains the Magistrate Judge's holding that the trial judge correctly instructed the jury and that the jury accordingly found that there was sufficient evidence to find petitioner guilty beyond a reasonable doubt. Because the jury determined that the testimony and the evidence presented by the State was credible and that the petitioner committed the subject offense, this Court defers to the jury's resolution of credibility determinations and justifiable inferences of fact. *U.S. v. Hatch,* 926 F.2d 387, 399 (5th Cir.), *cert. denied,* 500 U.S. 943, 111 S.Ct. 2239, 114 L.Ed.2d 481, and *cert. denied,* 502 U.S. 839, 112 S.Ct. 126, 116 L.Ed.2d 93 (1991).

### Conclusion

Reviewing the Magistrate Judge's Report and Recommendation *de novo* pursuant to 28 U.S.C. § 636(b)(1)(C) in conjunction with Petitioner's specific objections, the Court fails to find that petitioner's claims for *habeas corpus* relief bear fruit.

Accordingly,

**IT IS ORDERED** that petitioner's application for *habeas corpus* relief is **DENIED.**

credited by showing that the witness will benefit in some way by the defendant's conviction or acquittal, that the witness is prejudiced or that the witness has any other reason or motive for not telling the truth." (State Record 94–4167, Vol. 1 of 3, pp. 26, 27.)